## Case No. 11,584.

### RATHBONE et al. v. FOWLER et al.

[6 Blatchf. 294.] [1]

Circuit Court, S. D. New York. Jan. 22, 1869. [2]

AVERAGE—VOLUNTARY STRANDING—PERILS OF THE SEA—ADJUSTMENT OF AVERAGE.

1. Where a vessel and her cargo were in the common peril of going down together in deep water, where the vessel was anchored, the bows of the vessel being cut through by ice, and the master of the vessel ran her ashore, with her cargo, in shallower water, and the vessel was injured by lying on an uneven bottom, when so stranded, and all of the cargo was saved, a part of it without being wet, *held*, that the case was one of voluntary stranding, authorizing a general average among ship, freight, and cargo, of the loss and damage caused by the stranding.

[Cited in Shoe v. Low Moor Iron Co. of Virginia, 46 Fed. 128.]

[Distinguished in Emery v. Huntington, 109 Mass. 436.]

2. Damage caused to the vessel by the swelling of linseed in her cargo, through its being wet by water, which came through the holes made in the vessel by the ice, and damage to the cargo by such water, must be regarded as damage from a peril of the sea, and, therefore, not to be allowed for in general average.

3. That the water which damaged the cargo entered through such holes after the master determined to strand the vessel, makes no difference.

4. In view of the terms of the average bond in this case, and of the usage of the port in like cases, it was proper, in adjusting the average, to take, as the contributory value of the freight, one-half of the gross freight agreed to be paid for the voyage on which the disaster occurred.

This was an action of assumpsit, brought by [William Rathbone and others] the owners of the ship Oneiza, to recover from the defendants [Frederick R. Fowler and others] as consignees and owners of cargo transported on board of that vessel, on a voyage made by her from Calcutta to New York, a sum alleged to be due to the plaintiffs, by way of a general average contribution, for losses and expenses suffered and incurred in consequence of an alleged voluntary stranding of the ship. It was tried before Mr. Justice Nelson and a jury, on the 4th of June, 1868, and a verdict was taken, by consent, for the plaintiffs, for $12,077.73, subject to the opinion of the court on a case to be made, and a readjustment, if necessary, to be ordered by the court, with liberty for either party to turn the case into a bill of exceptions. The ship arrived off Sandy Hook, on the 16th of January, 1867, and anchored on that night inside of the Hook. There was so much ice in the bay, that she could not proceed until the 21st, when she was towed up, in the afternoon, as far as the quarantine ground, and anchored there. The water was full of floating ice. The next morning it was discovered that the ship was settling

---

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

2 [Affirmed in 12 Wall. (79 U. S.) 102.]

by the head, and, by seven o'clock a. m., she had six feet of water in her. The leak was caused by holes broken in both of her bows by the ice. Ineffectual attempts were made to free her from water by her pumps, and, the water being about forty-two feet deep where she was anchored, her master caused her to be towed a distance of three hundred yards, into shoaler water, on the Staten Island flats, until she grounded on the bottom at about eight o'clock a. m. At the time she grounded, she had ten feet of water in her. If she had sunk where she was anchored, she would have been totally submerged. A wrecking vessel, with divers and assistance, reached her about noon. The tide was then about an hour ebb, and the water was about the same height inside of her and outside. A diver was sent down, and the holes were stopped. A pump was then started about three or four o'clock p. m. The water had reached to within two feet of her upper deck. Some of her cargo was not wet. The cargo consisted of gunny cloth, linseed in bags, jute, saltpetre, gunny bags, and matting. She was pumped out by about eight or nine o'clock p. m., and, after that, she was kept free of water, and no more water reached her cargo. About half of her cargo was discharged into lighters, and she was then taken to the city, and the rest was discharged. The ship could have been raised, if she had sunk where she was anchored. The question of saving the vessel and cargo at either place was only a question of the expense of raising them. The wrecking bill was over $12,000, and would have been $30,000, if she had sunk where she was anchored. The defendants, on the 23d of January, 1867, signed an agreement, commonly called an "average bond," whereby they agreed to pay, as consignees of cargo, what should be found to be due from them, on their share of the cargo, for general average losses and expenses arising out of the transaction, provided such losses and expenses should be stated and apportioned by Johnson & Higgins, average adjusters, in accordance with the established usage and laws of the state of New York in similar cases. Such an adjustment was made by Johnson & Higgins, according to the usage and customs of the port of New York, and they ascertained the balance due from the defendants to be $11,380.78, July 20th, 1867. The adjusters made no allowance to the defendants for the damage sustained by their cargo from the water which entered the ship, on the ground that such damage was caused by water which entered through the holes made in the bows of the vessel by the ice, and, therefore, by a peril of the sea, and was not caused by the stranding, and was not a general average loss, toward which the ship and her freight should contribute. The effect of the water upon the linseed in bags was to swell it very much, and strain the ship consider-

ably. The swelling of the linseed and the lying on an uneven bottom at the place of stranding, together, started up the deck and strained and broke the beams and the straps over the beams. The adjusters did not allow, as a general average loss, anything for any damage sustained by the ship from the swelling of the linseed, on the ground that such swelling was caused by water which entered through the holes in the bows, from a peril of the sea, and, therefore, was not caused by the stranding; but they did allow, as a general average loss, the damage caused to the ship by lying on an uneven bottom, when stranded. The salvage expenses were put into general average. According to custom, one half of the gross freight for the whole voyage was taken as the net freight to be contributed for.

Edward H. Owen, for plaintiffs.

James C. Carter and Townsend Scudder, for defendants.

BLATCHFORD, District Judge. 1. The first question which arises is, whether there was a voluntary stranding of the ship, in such a sense as to authorize a general average, among ship, freight, and cargo, of the loss and damage caused by the stranding. The defendants contend that there was no voluntary stranding. The only damage to the ship, which it is claimed by the plaintiffs should be contributed for in this case, in general average, is the damage caused by her lying on the uneven bottom, when stranded. That damage was manifestly caused by the stranding, and by nothing else. There was a peril common to both vessel and cargo, where the vessel was anchored, at the time the master determined to strand her. That common peril was the danger of their going down together in deep water, where they would be entirely submerged, and where the cargo would have remained much longer under water, and been much more injured, and where the expense of raising them would have been much greater. This common peril was imminent and apparently inevitable, unless the ship should voluntarily incur the damage which has happened to her from lying on the uneven bottom, on the flats, in shallower water, for the purpose of putting the bulk of the cargo in a position where it would not .be required to remain so long under water as if it had sunk in the deeper water, and for the purpose of preventing a part of it, as it turned out, from being at all wet. The injury to the ship by her lying on the uneven bottom on the flats where she was stranded, was a voluntary jactus of the ship, in that regard, to avoid the peril above named, and was a transfer of such peril, in that regard, from vessel and cargo to vessel alone. The attempt to avoid the peril was successful. All the elements exist in the case which make up a voluntary

stranding, as settled by the supreme court. Barnard v. Adams, 10 How. [51 U. S.] 270, 303. The cargo was rescued, by the stranding, from the peril of the deep water, and the vessel was injured by such stranding. The vessel suffered to benefit the cargo. The case is, in my judgment, a very plain one for a general average contribution.

2. The adjusters did not make any improper allowance to the ship. They only allowed for the damage caused to her by lying on the uneven bottom. They did not allow for any damage caused to her by the swelling of the linseed. The water which swelled the linseed came through the holes made by the ice, which was a peril of the sea.

3. The adjusters were correct in not allowing, in general average, for any damage done to the cargo by water which came through the holes made by the ice. The evidence shows that all the damage done by water to the cargo was done by water which came through those holes. The fact that the water entered through the holes after the determination was made to strand the vessel, has nothing to do with the question.

4. In view of the terms of the average bond, and of the usage of the port of New York, in like cases, as proved, I think the adjusters acted properly in taking, as the contributory value of the freight, one-half of the gross freight agreed to be paid for the voyage on which the disaster occurred.

The principles on which the adjusters proceeded having been correct, I think the evidence fully warrants the results they arrived at.

There must be a judgment, on the verdict, for the plaintiffs.

[NOTE. In the report of this case as heard by the supreme court, it is said that, pursuant to the instructions of the court, the jury found a verdict in favor of plaintiff for the whole amount charged by the adjusters to the owners of the cargo, with interest from the date of the adjustment. Exceptions were filed by the defendants to the refusal of the court to instruct the jury as requested, and also to the instructions given by the court to the jury, and the defendants thereupon sued out a writ of error to the supreme court, where the judgment of the circuit court was affirmed. 12 Wall. (79 U. S.) 102.]